— FOR PUBLICATION —

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SEI INVESTMENTS GLOBAL FUNDS SERVICES,**<br>　　　　　**Plaintiff,**<br><br>　　　v.<br><br>**CITIBANK, N.A.,**<br>　　　　　**Defendant.** | **CIVIL ACTION**<br><br>**NO.  14-5972** |

## MEMORANDUM OPINION

　　　This action presents a dispute between an agent with authority to give trading instructions for an investment fund and a bank that served as custodian for the fund over the responsibility for certain trading losses that the fund suffered.  The agent, Plaintiff SEI Investments Global Funds Services ("SEI"), asserts that custodian bank, defendant Citibank, N.A., breached its contract in the way that it conducted certain trades and was also negligent with respect to those trades.  SEI claims that it is entitled to restitution and indemnification for certain amounts it repaid the investment fund to compensate for the fund's losses on those trades.  In its present Motion, Citibank argues that SEI has failed to state a claim upon which relief may be granted with respect to the breach of contract, unjust enrichment, and indemnity claims and that the negligence claim is barred by the "gist of the action" doctrine.  For the reasons set forth below, Citibank's Motion will be granted in part: the negligence count and the indemnity count will be dismissed.  The Motion will be denied as to the breach of contract count and the unjust enrichment count.

I.     BACKGROUND

In or about October 2013, the Advisors' Inner Circle Fund II ("TAICF-II"), entered into an investment advisory agreement with Kopernik Global Investors, LLC ("Kopernik") for Kopernik to provide investment advisory services with respect to the Kopernik Global All-Cap Fund (the "Fund").  Compl. ¶ 5.  TAICF-II also entered into an Amended and Restated Global Custodial Services Agreement (the "Agreement") with Citibank that governed, among other accounts, a custodial account maintained at Citibank for the Fund (the "Account").  *Id.* ¶ 6.  Pursuant to the Agreement, TAICF-II designated SEI as a party authorized to provide trading instructions to Citibank with respect to the Fund.  *Id*. ¶ 10.  In connection with its Agreement with the Fund, Citibank provided to SEI and the Fund a copy of its Global Custody Services Standards.  Those standards provided, inter alia, that "[c]lients will be advised (usually within two business hours of receipt) if any instruction received prior to the published securities cut-off times, cannot be processed on the day of receipt due to the format received or incomplete or unauthenticated instructions."  *Id*. ¶ 9.

One of the ways in which the parties agreed for SEI to communicate trading instructions to Citibank was through a trade communications system called Lightspeed TDMS.  Lightspeed generated messages known as "SWIFT" messages.  *Id*. ¶ 11.  On November 5th, 2013, SEI created instructions to Citibank via SWIFT message to settle four securities trades for the Fund.  *Id*. ¶ 12.  For reasons not explained in the Complaint, however, SEI did not send the SWIFT message regarding the trades to Citibank at that time.  *Id*. ¶ 14.  One day later, on November 6th, 2013, SEI sent a SWIFT message to Citibank with instructions to cancel the four trades ordered in the November 5th SWIFT message that it had not sent.  *Id*. ¶ 14.  Each trade listed in the cancellation instructions was designated with its own trade number.  *Id*. ¶ 16.  Upon receipt of

the message cancelling the trades that never had been made, Citibank took no action. *Id*. ¶ 19. Citibank did not contact SEI to inform it that Citibank had received instructions to cancel trades that it never had been instructed to make. *Id*. ¶ 18. Two days later, on November 8th, 2013, SEI sent a SWIFT message instructing Citibank to make four trades bearing the same trade numbers as those that had been listed in the November 6th cancellation instructions. *Id*. ¶¶ 16, 22. Upon receipt of the November 8th trading instructions, Citibank proceeded to execute the trades. *Id*. ¶ 20. Later on November 8th, SEI observed that the four trades had been made and instructed Citibank to cancel the four trades. *Id*. ¶ 23. Citibank executed the instruction to cancel the trades on the next business day, Monday, November 11th, 2013. *Id*. ¶ 24. The Fund suffered losses from the trades caused by changes in foreign exchange rates totaling $630,489.13. *Id*. ¶ 25. SEI subsequently reimbursed the Fund $530,489.13 plus interest for its losses and took an assignment of the Fund's claims with respect to losses in the four trades, including any rights the Fund might have against Citibank. *Id*. ¶¶ 27-28.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Great W. Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). "In other words, 'there must be some showing

sufficient to justify moving the case beyond the pleadings to the next stage of litigation.'" *Id.* (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)). In determining the adequacy of a complaint, the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

## III. ANALYSIS

### A. *Breach of Contract*

Citibank argues that Plaintiff's claim for breach of contract should be dismissed because the allegations of the Complaint demonstrate that it did not breach any duty. It contends that it followed SEI's directions, executing the trade instructions when they arrived on November 8th, 2013 and then executing the instruction to cancel the trades that it received later on November 8th on the next business day. At oral argument, Citibank pointed to several provisions in the Agreement that, it contends, set forth its obligations with respect to the trade and show that it fulfilled those obligations.

From a review of paragraph 6(A)(i) of the Agreement, which states that "the Custodian shall" "make payment for and/or receive any Securities" "only upon receipt of and in accordance with specific Instructions," Compl. Ex. A. ¶ 6(A)(i) (emphasis added), Citibank argues that it had a mandatory obligation to make the November 8th trades when it received appropriate instructions to do so. Thus, the trade was authorized under the contract and was not a breach of the Agreement. Citibank also looks to paragraph 5(ii) of the Agreement which provides that "[t]he Custodian is not responsible for errors or omissions made by the Client or resulting from fraud or the duplication of any instruction by the Client." *Id*. ¶ 5(ii). It contends that SEI erred

4

when SEI first sent cancellation instructions and then sent instructions to make the trades, and that Citibank, under the terms of the Agreement, cannot be responsible for that error.

As for the previously received cancellation instructions, Citibank pointed to paragraph 5(iv) of the Agreement which provides that "[t]he Custodian may decide not to act on any Instruction where it reasonably doubts its contents . . . ." *Id.* ¶ 5(iv). Given the non-mandatory nature of this provision, Citibank argues that it had the discretion to act or not to act on the initial cancellation instructions and the fact that it did not act on them does not provide a basis for a breach of contract action.

Citibank's position that it had discretion to act or not to act on the November 6th cancellation instructions because it reasonably doubted their contents does not support its motion to dismiss the breach of contract claim. It does quite the opposite. A professional who undertakes to perform a contractual duty has an obligation to so do with the ordinary level of skill of one in his profession. *Bloomsburg Mills, Inc. v. Sordoni Constr. Co.*, 164 A.2d 201, 203 (Pa. 1960); *Int'l Fid. Ins. Co. v. Gaco W., Inc.*, 645 N.Y.S.2d 522, 525 (Sup. Ct. App. Div. 1996).[1] The Agreement reflects this jurisprudential principle in that it contains a specific provision requiring Citibank to "exercise the due care of a professional custodian for hire." Compl. Ex. A ¶ 10. Thus, Citibank was required to exercise the skill and due care of a professional fund custodian in making the decision as to whether to act on the initial cancellation instructions or not.

The Court cannot determine on a motion to dismiss whether Citibank, acting pursuant to that standard should have contacted SEI if it received instructions cancelling a trade that had not been made. Nor can it determine whether, in the exercise of due care, a reasonably skilled professional custodian would match the cancellation instructions of November 6th with the trade

---

[1] The parties agree that there are no material differences between Pennsylvania and New York law for the purposes of this motion and that choice of law will not affect the outcome of the motion.

instructions of November 8th bearing the same trade identification numbers or whether it would then proceed with the trade in the face of those conflicting instructions. That is because the standard of care for a fund custodian "involves skill and training beyond that of an ordinary layman," *Electron Energy Corp. v. Short*, 597 A.2d 175, 180 (Pa. Super. Ct. 1991), and whether Citibank met that standard is a question of fact. *See Bloomsburg Mills*, 164 A.2d at 203 (whether architect met the professional standard of care was a jury question); *Int'l Fid. Ins.*, 645 N.Y.S.2d at 525 (whether roofing manufacturer met professional standards in training roofer to apply its products was a jury question). It also is an appropriate subject for expert testimony. *Storm v. Golden*, 538 A.2d 61, 64 (Pa. Super. Ct. 1988) ("As a general rule, our Supreme Court has held the 'expert testimony is necessary to establish negligent practice in any profession.'" (quoting *Powell v. Risser*, 99 A.2d 454, 46 (Pa. 1953))). Accordingly, whether Citibank acted in accordance with its professional duty is beyond the purview of a motion to dismiss and the motion will be denied as to SEI's breach of contract claim.

      **B.**    *Negligence*

Citibank contends that SEI's negligence claim should be dismissed under the "gist of the action doctrine," which bars a plaintiff from recovering in tort for the failure to perform a contract. *Bruno v. Erie Ins. Co.*, 106 A3d 48, 68 (Pa. 2014). Citibank argues that SEI cannot proceed with a negligence claim which is barred because it is based on the same allegations as SEI's contract claim, *i.e.*, that Citibank owed SEI a duty of reasonable care in executing instructions pursuant to the Agreement and failed to meet that duty. SEI contends that Citibank was under a separate duty in tort to use due care in carrying out its obligations as custodian. While both Pennsylvania and New York law lead to the same conclusion on this issue—that the negligence count must be dismissed—the analyses that get the Court to that conclusion differ.

6

1.   **Pennsylvania Law**

Under Pennsylvania law, the determination whether the gist of an action sounds in tort or contract flows from "the nature of the duty alleged to have been breached, as established" by the allegations of the complaint.  *Id*.

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id*. (citations omitted).  In cases where a tort action is permitted to arise in the context of a contractual relationship, it is:

> not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract.  Instead the contract is regarded merely as the vehicle or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Id*. at 70.  In contrast, "where the focus of the negligence claim is simply whether the professional did something that they were contractually required to do, courts have continued to apply the [gist of the action] doctrine." *Ins Co. of Greater N. Y. v. Fire Fighter Sales & Serv. Co.*, No. 11-1078, 2015 WL 737576, at *11 (W.D. Pa. Feb. 20, 2015).

As a result, "where the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts," the claimant is limited to contract damages.  *Morris v. Wells Fargo Bank N.A.*, No. 11-474, 2012 WL 3929805, at 11-12 (W.D. Pa. Sept 7, 2012).  This limitation is imposed because a "party should not be permitted to 'disrupt the expectations of the parties by supplanting their agreement with a tort action that claims that the party misperformed the agreement.'"  *Greenwood Land Co. v. Omnicare, Inc.*, No. 09-686,

7

2011 WL 33027, at *4 (W.D. Pa. Jan. 5, 2011) (quoting *Factory Mkt. Inc. v. Schuller Int'l, Inc.*, 987 F. Supp. 387, 394 (E.D. Pa. 1998)).

It is apparent that Citibank's alleged misconduct here consists of a "breach of . . . the specific executory promises" of its Agreement with the Fund. *Bruno*, 106 A.3d at 70. Section 5 of the Agreement sets out the manner in which Citibank was to respond to trading instruction. Paragraph 6 sets out for which duties the Custodian requires instructions before acting and those that it must carry out without further instructions. *Id.* ¶ 6. The conduct on which SEI's contract claim and tort claim are based is the same—the failure to respond appropriately to receipt of the various trade instructions.[2] Where a tort claim alleges the same conduct as a contract claim, it cannot stand. *See eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (where tort claim "concerned the performance of contractual duties," it "is generally held to be merely collateral to a contract claim"); *see also In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7–12 Litig.*, 517 F. Supp. 2d 832, 844 (E.D. La. 2007) (under Pennsylvania law, gist of action doctrine applied where contract and tort claims were based on the same conduct).

Pennsylvania carves out an exception to the gist of the action doctrine where a special relationship exists between a professional and his or her client. If the exception applies, tort duties may arise apart from the terms of the parties' contract. *Greenwood Land Co.*, 2011 WL 33027, at *4 (citing *Rapidigm v. ATM Mgmt. Servs. LLC*, 63 Pa. D & C.4th 234, 241-42 (Pa. Ct. Com. Pl. 2003)). SEI's efforts to persuade the Court to apply the exception here must fail because the professional negligence exception to the gist of the action doctrine applies in

---

[2] In its breach of contract count, SEI alleges that "[b]y failing to effectuate the Cancellation Instructions upon receipt–or to notify SEI that it had received instructions it could not execute–Citibank breached its contractual obligations . . . ." Compl. ¶ 33. In its negligence count, SEI alleges that "[b]y failing to act promptly and appropriately upon receipt of the Cancellation Instructions, Citibank breached its duty of care." *Id.* ¶ 38.

instances where the plaintiff relies on the "skill expertise, or special knowledge" of the professional but not where the issue is whether the professional "did what it was contractually bound to do." *Greenwood Land Co.*, 2011 WL 33027, at *4; *Rapidigm*, 63 Pa. D & C.4th at 243-44; *see also Sherman v. John Brown Ins. Agency*, 38 F. Supp. 3d 658, 666 (W.D. Pa. 2014) (finding gist of the action doctrine did not apply to professional negligence by insurance broker where the issue was not whether the policy conformed to what was promised in the parties' contract). Here the Fund relied on SEI's, and not Citibank's, professional expertise to make investment decisions and to provide advice regarding trades. Paragraph 10(C)(viii) of the Agreement specifies that "[t]he Custodian is not acting under this Agreement as an investment manager, nor as an investment, legal or tax advisor to the Client, and the Custodian's duty is solely to act as a Custodian in accordance with the terms of this Agreement." Compl. Ex. A ¶ 10(C)(viii). Citibank's function was to carry out the trading instructions given to it by others. SEI's claim is that Citibank failed to do what it was contractually bound to do in carrying out that duty. Thus, the exception does not apply. *See Hopsicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp.2d 578, 583 (E.D. Pa. 2004); *Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 WL 536666, at *8-9 (E.D. Pa. May 2, 2000).

      **2.**     **New York Law**

While the New York courts do not apply the gist of the action doctrine, *per se*, New York law also precludes SEI from proceeding on its negligence claim here. Under New York law, "[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract . . . ." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193-94 (N.Y. 1987) (citations omitted). Where the conduct that is the

basis of a tort claim is the same as that alleged in a breach of contract claim, the tort claim cannot stand. *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 518 (S.D.N.Y. 2013) (no tort claim "where a plaintiff merely reasserts duties already specified in a contract"); *Purchase Partners, LLC v. Carver Fed. Sav. Bank,* 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012) (no tort claim where the claim "does no more than assert violations of a duty which is identical to and indivisible from the contract obligations which allegedly have been breached"); *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 401 (S.D.N.Y. 2004) (no tort claim available where "[w]ithout the obligation imposed under the term of the Credit Agreement, the defendants would be under no obligation to use special care to provide accurate financial information to the banks"). As discussed above, SEI's tort claim does not "spring from circumstances extraneous to . . . the contract," *BNP Paribas*, 949 F. Supp. 2d at 518, but alleges the same conduct that forms the basis of its tort claim.

In addition, New York's economic loss doctrine prohibits a plaintiff from recovering in tort for claims arising out of the breach of a contract. More specifically, the doctrine "prevents a plaintiff from recovering purely economic losses in a negligence action." *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 178 (S.D.N.Y. 2012). "[A] claimant suffering purely financial losses is restricted to an action in contract for the benefit of its bargain." *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 711 N.Y.S.2d 391, 393 (Sup. Ct. App. Div. 2000), *rev'd on other grounds*, 750 N.E.2d 1097 (N.Y. 2001). Here, SEI seeks solely economic damages arising out of the alleged breach of a contract and it is limited by the economic loss doctrine to contract damages.

Like Pennsylvania, New York recognizes that a special relationship may exist between a professional and his or her client out of which tort duties may arise apart from the terms of the

parties' contract. *17 Vista Fee Assocs. v. Teachers Ins. & Annuity Assoc. of Am.*, 693 N.Y.S.2d 554, 559 (Sup. Ct. App. Div. 1999). It is well established, however, that the special relationship does not arise in actions, like this one, involving the contractual duties between corporations and financial institutions. *Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 670 (S.D.N.Y. 2008) (citing *TD Waterhouse Investor Servs. v. Integrated Fund Servs., Inc.*, No. 01-8986, 2003 WL 42013, at *12-13 (S.D.N.Y. Jan. 6, 2003); *THC Holdings Corp. v. Tishman*, Nos. 93-5393, 95-4422, 1998 WL 305639, at *4 (S.D.N.Y. June 9, 1998)); *see also Purchase Partners*, 914 F. Supp. at 497-98 (mortgage lender did not have special relationship with participating lending bank that would subject it to tort liability); *Cruz*, 855 F. Supp. 2d at 167-68, 178 (bank owed no special duty to depositors whose accounts were restrained and who were charged fees in response to judgment creditors' collection attempts); *JP Morgan Chase*, 350 F. Supp. 2d at 401 (that defendants knew banks would rely on representations in extending loans under credit agreement did not create special relationship distinct from contractual obligations). Thus, under New York law, SEI's claim is a breach of contract claim, and SEI may not recover for that alleged breach under a negligence theory.

Accordingly, SEI's negligence claim will be dismissed.[3]

C. *Unjust Enrichment*

To survive Citibank's Motion to Dismiss SEI's unjust enrichment/restitution claim the Complaint must include allegations of facts which raise a reasonable expectation that discovery will reveal that SEI conferred a benefit on Citibank, appreciation of such benefits by Citibank, and acceptance and retention of such benefits under such circumstances that it would be inequitable for Citibank to retain the benefit without payment of value. *Schenck v. K.E. David,*

---

[3] At oral argument, SEI conceded that, if the Court dismissed its negligence claim, its indemnification claim also would fail. Accordingly, the indemnification claim also will be dismissed.

*Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995) (internal quotation marks omitted); *see also Mandarin Trading, Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011).

SEI alleges that Citibank is liable to it for unjust enrichment as the result of SEI's repayment of the amount the Fund lost on the four trades at issue. SEI reimbursed the Fund $100,038.67 on February 12, 2014 and an additional 430,450.46 on April 30, 2014. Almost one month later, on May 27, 2014, the Fund executed an Assignment of Claims to SEI, including the Fund's claims against Citibank arising out of the four trades. SEI contends that its payments to the Fund actually were payment of Citibank's liability based on Citibank's alleged breach of contract. In making the payment, SEI alleges, it conferred a benefit upon Citibank that amounts to an unjust enrichment of Citibank. Opp'n at 13.

Citibank argues that any liability it may have arises from breach of the Agreement and that a separate claim for unjust enrichment for the alleged breach of a written contract is not permitted. Mot. at 10-11. That argument would be sound if SEI made its claim solely as the assignee of the Fund's claim for breach of contract. SEI, however, asserts unjust enrichment in its own right to recover funds it spent to pay off Citibank's alleged liability to the Fund. In each of the cases on which Citibank relies, the party asserting unjust enrichment claims was either a party to a contract with the defendant or the assignee of a party to that contract and asserted claims solely in those roles. *McGee v. State Farm Mut. Auto. Ins. Co.*, No. 09-3579, 2011 WL 5409393, at * 9 (E.D.N.Y. Nov. 8, 2011) (plaintiff was assignee of contracting party); *Clark-Fitzpatrick, Inc.*, 516 N.E.2d at 193 (plaintiff and defendant were parties to a contract and the claims arose directly from the performance of that contract); *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (plaintiff and defendant were parties to an agreement and plaintiff attempted to use unjust enrichment claim to impose terms not contained in the

agreement ). SEI, however, asserts a claim for unjust enrichment that does not arise directly from Citibank's alleged breach of the Agreement, but from SEI's actions in paying what it claims was Citibank's liability to the Fund. Citibank's alleged liability arises out of a contract to which SEI was not a party, and there was no contract between SEI and Citibank.

Unjust enrichment "imposes a duty, not as a result of any agreement, . . . but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. Ct. 2006) (citation and internal quotations omitted). An unjust enrichment claim that arises out of conduct other than performance of a party's own contract can serve as the basis for an unjust enrichment claim. *See Sebastian Holdings, Inc. v. Deutsche Bank AG*, 912 N.Y.S.2d 13, 15-16 (Sup. Ct. App. Div. 2010) (unjust enrichment claim is proper when it "does not depend on the existence of valid and enforceable contracts between the parties, but rather arises from facts wholly independent of any contract"); *Zucker v. Wildmann*, 46 Misc.3d 1214(A), at \*6 (N.Y. Sup. Ct. 2015) (unjust enrichment claim was proper where there was no contract between the parties, and the claim arose from payment made to a nonparty).

Where a party pays a debt owed by another, the latter party is enriched by the benefit of the satisfaction of his debt. *Elec. Ins. Co. v. Travelers Ins. Co.,* 507 N.Y.S.2d 531, 532 (Sup. Ct. App. Div. 1986); *Blue Cross of Cent. N.Y. v. Wheeler*, 461 N.Y.S.2d 359, 380 (Sup. Ct. App. Div. 1983); *see also Resource Props. XLIV, Inc. v. Growth Props., Ltd.*, No. 3750, 2002 WL 31012366, at \*8 (Pa. Ct. Com. Pl. Aug. 2, 2002). SEI paid what it alleges was Citibank's liability to the Fund even though it was not a party to the Agreement between Citibank and the Fund. Compl. ¶ 27. If SEI is able to establish that Citibank was liable to the Fund and that SEI satisfied that liability to Citibank's benefit, then Citibank will have been unjustly enriched to the

13

extent SEI paid a debt that Citibank owed. SEI's claim for unjust enrichment accrued when it made those payments in February and April, 2014. Citibank has cited no authority for the proposition that a subsequent assignment of the Fund's contractual claim against the Fund divests SEI of the preexisting claim for unjust enrichment that it had in its own right.[4]

For the purposes of this Motion, SEI adequately has pleaded a claim for unjust enrichment. The motion will be denied as to its claims for unjust enrichment.

An appropriate Order follows.

Dated: **April 21, 2015**

                                                 **BY THE COURT:**

                                                 **/S/WENDY BEETLESTONE, J.**

                                                 _____

                                               **WENDY BEETLESTONE, J.**

---

[4] This is not to say that SEI would be entitled to a double recovery. However, at this juncture, SEI is entitled to proceed on alternative theories of breach of its assigned contract rights and unjust enrichment in its own right. *See Baker v. Family Credit Counseling Corp.,* 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006); *Temple Univ. Hosp., Inc. v. Group Health, Inc.,* No. 5-102, 2006 WL 146426, at *7 (E.D. Pa. Jan. 12, 2006).